**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 30, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GROVER LEE MISKOVSKY,

      Plaintiff - Appellant,

v.

JUSTIN JONES, Director,
OKLAHOMA DEPARTMENT OF
CORRECTIONS, JIM RABON,
Sentence Administrator; RONALD
ANDERSON; TWYLA MASON
GRAY; BECKY GUFFY, Assistant to
Warden; FELICIA HARRIS, Legal
Library Supervisor; KAY ROE, Trust
Account Technician; RICKEY
FRITCHER,

      Defendants - Appellees.

No. 10-6181
(D.C. No. 5:08-CV-00123-HE)
(W.D. Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **HARTZ**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **ANDERSON**, Circuit Judge.

---

Grover Miskovsky, a prisoner of the State of Oklahoma, brought claims under 42 U.S.C. § 1983 in the United States District Court for the Western District of Oklahoma, alleging that Justin Jones, Director of the Oklahoma Department of Corrections (ODOC), had violated his constitutional rights by seizing the money in his prison draw account. The district court granted Jones summary judgment on the constitutional claims, dismissed without prejudice Mr. Miskovsky's challenge to his state sentence, and gave him leave to amend. After Mr. Miskovsky filed an amended complaint, which named additional defendants, the court dismissed his new claims. He appeals. We have jurisdiction under 28 U.S.C. § 1291; and we affirm in part and reverse in part.

## I.    BACKGROUND

On April 28, 2000, Oklahoma state-court judge Twyla Mason Gray sentenced Mr. Miskovsky to consecutive terms of 84 years' imprisonment for racketeering, 7 years' imprisonment for indecent exposure, and 2 years' imprisonment for attempted perjury by subordination. Judge Gray also ordered that he pay a total of $21,800 for fines, compensation to victims, and costs, stating, "The Court orders that the Department of Corrections is to use the entire draw account of this defendant towards the payment of fines, costs and fees until all are satisfied." R., Vol. 1 pt. 1-1 at 49.

The facility where Mr. Miskovsky was incarcerated established for him a trust account, which was divided into a draw account and a statutorily required savings account. *See* Okla. Stat. tit. 57 § 549(A)(5) (1996). Twenty percent of all prison wages were placed in the savings account; those funds were to be paid to Mr. Miskovsky upon his release, although they could be used to pay filing fees for state or federal litigation. Prisoners used the draw account to pay for other expenses, including medical and legal expenses and items purchased from the prison canteen.

The prison made no payment from Mr. Miskovsky's draw account for his state-court fines and costs until May 18, 2006. At that time his entire draw-account balance of $211.66 was remitted to the Oklahoma court. The prison made additional periodic payments toward the amount owed until July 10, 2007; the total taken from the draw account was $416.78.

On February 4, 2008, Mr. Miskovsky brought a pro se suit against Jones under 42 U.S.C. § 1983. He alleged that ODOC's use of his entire draw account to pay his fines and court costs violated the Eighth Amendment prohibition on cruel and unusual punishment as well as the Fourteenth Amendment guarantees of due process and equal protection. As ordered by the district court, Jones filed a *Martinez* Report of the ODOC's investigation of Mr. Miskovsky's claims. *See Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978) (authorizing district courts to order prison officials to investigate civil-rights complaints and prepare a

report for submission to the court).  At the same time, Jones filed a motion to dismiss or grant summary judgment.  A magistrate judge recommended (1) that to the extent that Mr. Miskovsky challenged his sentence, his claim should be dismissed without prejudice, and (2) that Jones should be granted summary judgment on Mr. Miskovsky's Eighth Amendment, equal-protection, and due-process claims.  The district court adopted the recommendation but gave Mr. Miskovsky "leave to file an amended complaint . . . if he has other claims arising out of the same underlying circumstances and which are not inconsistent with the disposition of claims effected by this order."  R., Vol. 1, pt. 2-4 at 168.

Mr. Miskovsky filed an amended complaint in which he purported to represent a class of prisoners who had been treated similarly to him and which added as defendants the Oklahoma Department of Corrections, six ODOC employees, Judge Gray, and John Doe.  The amended complaint reiterated Mr. Miskovsky's previous claims of constitutional violations and added a number of other allegations.  It claimed that Defendants had entered into a conspiracy to violate his constitutional rights and that Defendants, in retaliation for his filing previous suits against Judge Gray and the present § 1983 action, had, among other things, seized his legal mail, transferred him to a more dangerous prison, conducted an irregular search of his cell and seized items he had purchased from the canteen, seized the money in his mandatory savings account, and denied him

medical care. The amended complaint also asserted that Defendants had violated provisions of the Oklahoma constitution and its statutes.

The magistrate judge recommended that the amended complaint be dismissed. The district court adopted the recommendation, dismissing most claims with prejudice, although it dismissed without prejudice Mr. Miskovsky's state-law claims and some claims not factually related to the alleged misuse of his draw account.

## II.   DISCUSSION

Mr. Miskovsky's opening brief is organized under 13 issues.[1] As best we can understand the brief, it raises the following arguments: (1) the district court

---

[1] The issues listed are: (1) the district court was wrong to conclude that his suit attempted to vacate his state judgment or sentence; (2) the court was wrong to dismiss any of his claims under *Heck v. Humphrey*, 512 U.S. 477 (1994); (3) the court misinterpreted the amount of control that ODOC has over draw-account funds; (4) the provision in the judgment ordering that Mr. Miskovsky's entire draw account be used to pay his fines and court costs should not be given any effect; (5) the court's decisions were based upon clearly erroneous factual conclusions (although he does not identify which factual conclusions are clearly erroneous); (6) the court could not apply preclusion against him because he had not had a full and fair opportunity to litigate his claims (his actual argument, however, appears to be that the district court did not apply the proper de novo standard of review to the magistrate judge's recommendation); (7) he sufficiently stated a cause of action for conspiracy; (8) he linked each defendant to a violation of his constitutional rights; (9) Defendants are not entitled to qualified immunity; (10) Defendants violated his Eighth Amendment rights; (11) the court erred in determining that his complaints were frivolous (although he does not state which specific claims the court should not have found frivolous); (12) his retaliation claims relating to seizure of his legal mail and to transfer to a more dangerous prison should not have been dismissed; and (13) the court should not have declined to exercise jurisdiction over his state-law claims.

erroneously concluded that he was challenging his state sentence; (2) *Heck v. Humphrey*, 512 U.S. 477 (1994) does not apply to his claims; (3) the court erroneously granted summary judgment on his Eighth Amendment claim (he does not challenge the grant of summary judgment on his due-process and equal-protection claims); (4) the district court misinterpreted ODOC's authority to disburse money from his draw account; (5) Defendants are not entitled to qualified immunity; (6) the court erred in dismissing his retaliation claims related to seizure of his legal mail and to his transfer to a more dangerous prison; (7) his conspiracy claims should not have been dismissed; and (8) the court should not have declined to exercise jurisdiction over his state-law claims. We address these claims in turn.

### A.     Challenge to Judgment and Sentence, and *Heck v. Humphrey*

Mr. Miskovsky complains that the district court dismissed his claim challenging his judgment and sentence even though he raised no such claim. But if the court erred in dismissing a nonexistent claim, Mr. Miskovsky suffered no injury, and we need not concern ourselves with the issue.

Mr. Miskovsky's *Heck* argument is related but more substantial. *Heck* stated:

> [I]n order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a

state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486–87 (footnote and citation omitted). Mr. Miskovsky contends that his claims do not challenge actions that would render his conviction or sentence invalid. He may be correct, but we need not resolve the issue. The district court invoked *Heck* only as a ground for dismissing the constitutional claims in Mr. Miskovsky's amended complaint that had been made in his original complaint, and it also dismissed those claims on the merits. Because we can affirm the dismissals on the merits, it matters not whether *Heck* would also bar the claims.

**B.     Eighth Amendment Claim**

The district court granted summary judgment against Mr. Miskovsky on his Eighth Amendment claim.

> We review de novo the district court's summary judgment decision, applying the same standard as [should] the district court. Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

*Seegmiller v. Laverkin City*, 528 F.3d 762, 766 (10th Cir. 2008) (citation and internal quotation marks omitted).

> An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and a subjective component associated with the deficiency. The objective component requires conditions sufficiently serious so as to deprive inmates of the minimal civilized measure of

life's necessities. Alternatively, a condition must be sufficiently serious so as to constitute a substantial risk of serious harm. The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety.

*Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (citations and internal quotation marks omitted). Mr. Miskovsky's claim fails on the objective component. He claims that prison officials, by taking all the money in his draw account, denied him access to hygiene items, clothing, and eyeglasses and that they denied him use of the co-pay system that indigent inmates could use to pay for medical services. But, as the magistrate judge's report and recommendation explains, the record, including the *Martinez* report, establishes that he suffered minimal, if any, harm.

### C.    ODOC's Authority to Disburse Money from the Draw Account

Mr. Miskovsky contends that the district court should not have concluded that ODOC could use all the money in his draw account to pay his court costs and fines. He asserts that the pertinent Oklahoma statute and ODOC regulations permit prison officials to disburse only a small portion of his prison wages. But even if the court misconstrued Oklahoma law, a violation of that law by prison officials would not be a ground for relief under § 1983. *See Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007) ("Section 1983 does not provide a basis for redressing violations of *state law*, but only for those violations of *federal law* done under color of state law." (ellipses and internal quotation marks omitted)).

**D.     Qualified Immunity**

Mr. Miskovsky argues that Defendants are not entitled to qualified immunity because the law was clearly established and they knew they were violating it. The district court, however, did not dispose of any claims on the ground of qualified immunity. His argument is therefore irrelevant.

**E.     Retaliation Claims**

Mr. Miskovsky challenges the district court's dismissal of the claims (added in his amended complaint) that Defendants retaliated against him for bringing lawsuits by interfering with his legal mail and by transferring him to a more dangerous prison. We affirm the dismissal of the first claim but must reverse the dismissal of the latter.

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (brackets and internal quotation marks omitted).

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). We address the legal-mail retaliation claim before turning to the prison-transfer claim.

The verified amended complaint alleges the following: On August 4, 2008, Mr. Miskovsky gave Defendant Felicia Harris, a law librarian, legal mail to be sent to attorney Bob Esensten, care of Douglas Graham, at the Wasserman law firm. When Defendant Ron Anderson was informed of the letter, he ordered it seized. Defendant Becky Guffy, at Anderson's direction, issued Mr. Miskovsky a written reprimand telling him that the mail was not addressed to an attorney, that the firm denied representing him, and that he would have to pay postage and copying costs to send his mail or have his documents returned. Mr. Miskovsky then filed a grievance and provided a February 28, 2008, letter from the law firm, indicating that it was representing him and asking that it be placed on his approved call list. But his grievance was denied and he was informed that his request would be considered only if he provided a copy of the representation agreement and proof that the firm was licensed in Oklahoma. These were new requirements created by Anderson and they resulted in Mr. Miskovsky's inability to communicate with the law firm and the loss of its pro bono services.

These allegations may adequately state a claim of improper interference with legal mail. But on appeal Mr. Miskovsky's sole claim is that the actions regarding his mail were improper retaliation for his litigation activities. Where that claim fails is the absence of allegations to support the assertion that the legal-

-10-

mail actions were motivated by retaliation. He points to no litigation activity between his initiating this suit on February 4, 2008, and the seizure of his mail on August 4—six months later. Even if the initial complaint could have generated animosity against him by the Defendants involved in the mail episode (which is doubtful), the alleged retaliatory action was not "in close temporal proximity to the protected activity" *Gee*, 627 F.3d at 1189. A six-month gap between the protected activity (the initial complaint) and the alleged retaliation cannot, without more, establish causation. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (In employment-discrimination cases alleging retaliation for protected activity, "we have held that a three-month period, standing alone, is insufficient to establish causation.").

But Mr. Miskovsky's retaliation claim based on his prison transfer does not have that flaw. He alleges as follows: Anderson and Defendant Jim Rabon ordered Mr. Miskovsky transferred from the James Crabtree Correction Center (JCCC) to the Mack Alford Correction Center (MACC) on December 4, 2008. When he arrived at MACC, he asked the duty officer why he had been transferred there when it was locked down for security reasons and he had been well-behaved at JCCC. The officer responded, "You really pissed off a Judge." Pl.'s Second, & Supplementary Amended Compl. at 8, *Miskovsky v. Jones*, No. CIV-08-123-HE (W.D. Okla. Aug. 31, 2009) ECF No. 77 (internal quotation marks omitted). The officer further told him that MACC was a more dangerous prison than JCCC and

that he would be in danger there unless he remained in solitary confinement. The complaint further asserts that Anderson and Rabon transferred him in retaliation for his filing two pleadings on November 19, 2008, that described their behavior in relation to his draw account and alleged that they were conspiring with Judge Gray to harass him.

These allegations provide the three elements of a retaliation claim required by *Shero*. His constitutionally protected activity was filing pleadings in federal court. His transfer to a more dangerous prison would chill a person of ordinary firmness from continuing to pursue the litigation. And the allegation of retaliatory motive is supported by the "close temporal proximity"—15 days—between his filing the pleadings and his transfer to MACC. *Gee*, 627 F.3d at 1189.

We therefore reverse the dismissal with prejudice of Mr. Miskovsky's retaliation claim related to his transfer to MACC, and we remand the claim to the district court for further proceedings.[2]

### F. Conspiracy Claims

The district court dismissed Mr. Miskovsky's conspiracy claims as frivolous or malicious because the claims had no factual support. *See* 28 U.S.C.

---

[2]We note that the district court dismissed without prejudice some claims in the amended complaint because they were not related to the original suit and thus not within the court's leave to amend. It does not appear that the retaliation claims were dismissed on that ground, but we do not foreclose that disposition on remand.

§§ 1915(e)(2)(B)(i), 1915A(b)(1).  We "review[] frivolousness dismissals for an abuse of discretion."  *Conkle v. Potter*, 352 F.3d 1333, 1335 n.4 (10th Cir. 2003).  A claim can be dismissed for frivolousness "only if it lacks an arguable basis either in law or in fact."  *Fratus v. Deland*, 49 F.3d 673, 674 (10th Cir. 1995) (internal quotation marks omitted); *see Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006).  "[D]ismissal is appropriate for a claim based on an indisputably meritless legal theory."  *Fratus*, 49 F.3d at 674 (internal quotation marks omitted).

All but one of Mr. Miskovsky's conspiracy claims were properly dismissed because he has not shown any constitutional violation and "a deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim." *Snell v. Tunnell*, 920 F.2d 673, 701–02 (10th Cir. 1990); *see Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990) (§ 1983 conspiracy requires both agreement and actual deprivation of a right).  The only remaining potential conspiracy claim in the amended complaint is the alleged conspiracy to transfer Mr. Miskovsky to an unsuitable prison in retaliation for his filing two pleadings that allegedly angered Anderson, Rabon, and Judge Gray.  Because the complaint adequately alleges a conspiracy among those three Defendants, we reverse the dismissal of that conspiracy claim and remand it to the district court for further proceedings.

G.      **Dismissal of State-Law Claims**

-13-

After disposing of Mr. Miskovsky's federal claims, the district court dismissed without prejudice any state-law claims that he was attempting to bring. Mr. Miskovsky contends that the court should instead have retained jurisdiction or certified the state-law issues to the Oklahoma Supreme Court.

When state-law claims come within the district court's supplemental jurisdiction under 28 U.S.C. § 1367(a), the court has discretion not to exercise that jurisdiction once it has dismissed all claims over which it has original jurisdiction. *See id.* § 1367(c)(3); *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010). That discretion would have been exercised properly if we had affirmed the dismissal of all Mr. Miskovsky's federal claims. But because we reverse the dismissal of two of those claims and remand them to the district court, § 1367(c)(3) no longer applies. We therefore set aside the dismissal of the state-law claims and remand for further consideration. We do not foreclose a future dismissal of those claims under § 1367(c).

## III.   CONCLUSION

We REVERSE the judgment of the district court with regard to Mr. Miskovsky's retaliation claim based on his prison transfer, the related conspiracy claim, and the state-law claims and REMAND for proceedings consistent with this order and judgment. We AFFIRM the judgment of the district

court on all other claims and DENY all pending motions.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge